# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ROBIN BERRY,                    )
                                )
            Plaintiff,          )
                                )
v.                              )    Case No. CIV-16-307-RAW-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Robin Berry (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 5, 1971 and was 44 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a cashier, resource representative, and shift leader. Claimant alleges an inability to work beginning July 17, 2011 due to limitations resulting from seizures, severe memory loss, stress, anxiety, high blood pressure, epilepsy, and depression.

**Procedural History**

On April 9, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On December 11, 2014, Administrative Law Judge ("ALJ") J. Dell Gordon conducted an administrative hearing by video with Claimant appearing in Ada, Oklahoma and the ALJ presiding from Oklahoma City, Oklahoma.  On March 17, 2015, the ALJ issued an unfavorable decision.  On May 12, 2016, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a full range of work at all exertional levels with some limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) not including step two findings in the RFC; (2) failing to properly consider whether Claimant's impairments met or equaled Listing 12.05C; and

4

(3) failing to assess the credibility of the testimony of Claimant's mother.

**RFC Assessment**

In his decision, the ALJ determined Claimant suffered from the severe impairments of epilepsy, depression, and anxiety related disorder. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform a full range of work at all exertional levels. (Tr. 16). He determined Claimant had non-exertional limitations which included that she could carry out simple and some complex tasks; could interact with co-workers and supervisors on a superficial work basis, could have no interaction with the public; and should avoid hazards due to possible seizures "were (sic) not compliant with medications". (Tr. 17).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of floor waxer, hand packer, and sorter, all of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 22). As a result, the ALJ found Claimant was not disabled from July 17, 2011 through the date of the decision. Id.

Claimant first contends that the ALJ failed to include the seizures he found to be a severe impairment at step two in his RFC assessment. The ALJ imposed a limitation in the RFC attributable

5

to her seizure condition in avoiding hazards. He then added a condition which obviously contains a typographical error – "were not compliant with medications." It is reasonable to presume that the ALJ intended to write "when not compliant with medications." The ALJ found Claimant's seizure episodes were controlled by Dilantin. (Tr. 20). The medical evidence in the record indicates that as long as Claimant is compliant with her medication regimen, she does not have seizures. (Tr. 68, 99). Certainly, the record does not support a finding that her seizure condition precludes Claimant from engaging in basic work activities. Claimant appears to argue that the ALJ found her to be non-compliant with taking her medication and that he should have determined non-compliance as a credibility issue rather than as a matter which supports a finding of non-disability. The ALJ attributed no adverse finding to Claimant's non-compliance. Rather, he recognized the reality that Claimant did not suffer seizures so long as she was taking her medication. No error is found in the manner in which the ALJ addressed Claimant's seizure condition in the RFC.

Claimant also challenges the ALJ in failing to make a correlation between Claimant's alleged non-compliance with medication recommendations and her cognitive impairments. Again, since the ALJ did not make any findings on non-compliance which worked to Claimant's detriment, no further discussion of the issue

6

was required.

Claimant takes this argument further in contending that the ALJ should have included additional restrictions in the RFC attributable to Claimant's seizure condition.  Specifically, Claimant asserts that the ALJ should have included limitations in working around moving machinery, working around things that could harm her during a seizure, and a reduction in productivity due to seizures.  Claimant fails to cite to any evidence in the medical or vocational record where a professional has required this level of restriction.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001).  A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96–8p.  The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id.  A claimant's residual functional capacity is

7

based on all the evidence in the record, including the medical opinions of record. 20 C.F.R. §§ 404.1527, 404.1545(a)(1). Where the evidence does not support the level of limitation urged by Claimant, this Court will not find that the ALJ should have found further restrictions in the RFC based upon Claimant's argument that the existence of the condition necessarily poses certain specific limitations. The Court must have medical evidence warranting such restrictions. The ALJ's RFC limitations associated with Claimant's seizure disorder are supported by substantial medical evidence.

### Consideration of Listing 12.05C

Claimant challenges the ALJ's failure to consider Listing 12.05C at step three. While the ALJ expressly considered whether Claimant met Listing 12.04 and 12.06, he did not reference Listing 12.05C regarding mental retardation. (Tr. 15). The ALJ is required to follow the procedure for determining mental impairments provided by regulation. 20 C.F.R. §§ 404.1520a, 416.920a; *See*, Listing of Impairments. The procedure must be followed for the evaluation to be considered valid. <u>Andrade v. Sec. of Health & Human Services</u>, 985 F.2d 1045, 1048 (10th Cir. 1993). The ALJ must first determine whether there are medical findings of mental impairment especially relevant to the ability to work found in Part A of the Listing of Impairments. 20 C.F.R. §§ 404.1520a(b)(2),

8

416.920a(b)(2). Additionally, Claimant must show he satisfies two of the following required restrictions: (1) marked restriction in activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C, 12.04. The ALJ must then either evaluate the degree of functional loss resulting from the impairment, using the Part B criteria, or examine the special criteria set forth in the listings for evaluating the severity of particular impairments. In asserting a condition meets a listing, a claimant bears the burden of demonstrating that his impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

To meet or equal Listing § 12.05C, a claimant must demonstrate the following:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\* \* \*

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>
> * * *

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

Claimant must satisfy all of these required elements for a Listing to be met. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The Social Security Administration's Program Operations Manual System ("POMS") No. DI 24515.056(D)(1)(c) provides the following instructions under Listing 12.05C:

> Slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitations of function may support an equivalence determination. It should be noted that generally higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS DI 24515.056(D)(1)(c).

"This evaluation tool, however, is used only when 'the capsule definition'" — i.e., the introductory paragraph—of Listing 12.05 is satisfied. Crane v. Astrue, 369 F. Appx. 915, 921 (10th Cir. 2010) (quoting POMS DI 24515.056(B)(1)). The introductory paragraph or "capsule definition" of Listing 12.05 requires a claimant to satisfy three criteria: (1) "significantly subaverage general intellectual functioning;" (2) "deficits in adaptive behavior;" and (3) "manifested deficits in adaptive behavior before age 22." Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009); Randall v. Astrue, 570 F.3d 651, 661 (5th Cir. 2009).

On June 27, 2013, Claimant was evaluated by Dr. Deann M. Gattis, a license psychologist. Dr. Gattis administered the Montreal Cognitive Assessment test. She concluded that Claimant's score of 16/30 placed "her below the cut off score for the normal range of cognitive functioning." (Tr. 367). Dr. Gattis diagnosed Claimant with Mood Disorder (Depression) due to her medical condition (seizures) with a GAF of 45. Id.

Claimant was also evaluated by Dr. Robert Danaher, a clinical psychologist on October 5, 2013. He administered the WAIS-III test which yielded a Verbal Scale IQ of 78, a Performance Scale IQ of 70, and a Full Scale IQ of 72. (Tr. 420). Dr. Danaher noted that Claimant left the room during the examination to take a Tylenol for a headache from the drive. Dr. Danaher wrote that

> Judging by her behavior after she had left the room to take the medication Ms. Anderson [Emily Anderson, Psychology Technician] and I had the impression that she had taken something stronger than 'Tylenol.' She was much more controlled in her behavior, during the first subtests of the Wechsler Memory Scale III, before whatever she had taken that (sic) its impact on her functioning and behavior.
>
> The patient appeared to be providing her best effort though the validity of assessment results are somewhat in question due to issues related to the unknown medication she had taken.

(Tr. 419-20).

The ALJ questioned the validity of the testing due to Dr. Danaher's findings. (Tr. 18). While the ALJ should have expressly considered Listing 12.05C in his decision given the evidence of

11

record, the fact remains that Claimant bears the burden at step three to provide the evidence to satisfy the requirements of the particular listing. In this particular case, the record is devoid of any evidence that Claimant experienced the required deficits in adaptive functioning prior to the age of 22.

Claimant also suggests that the ALJ should have ordered a third consultative examination given the low GAF score and inconsistency in Dr. Danaher's opinion. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act

as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination exists in the record. Claimant's perceived inconsistency is, in fact, simply an evaluation of the validity of testing which Dr. Danaher was obligated to provide if he had a suspicion of a problem with the testing results. The ALJ did not violate his duty to

develop the record by not ordering further medical evaluations but simply took Dr. Danaher's comment into consideration in evaluating the report. Additionally, an additional consultative examination would not change the fact that evidence of the onset of deficits in adaptive functioning before the age of 22 is lacking.

Claimant also suggests that the ALJ's failure to specifically provide the weight he afforded Dr. Danaher's opinion requires reversal. It is obvious from the decision that the ALJ considered the opinion and adopted its content, including the questioning of the validity of the testing results. As such, the failure to state the specific weight given to the opinion does not render the decision flawed. *See* Butler v. Astrue, 410 Fed.Appx. 137, 142 (10th Cir. 2011).

As for Claimant's argument that the lower GAF score should have triggered a requirement for further testing, "[t]he GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir.

(Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir.

15

2002). This Court finds the ALJ was under no legal obligation to order further testing based upon Claimant's GAF scores or take any further action on the score alone.

**Credibility Determination**

Claimant also contends the ALJ failed to perform a proper credibility analysis. The ALJ discussed Claimant's testimony and the objective medical evidence which was inconsistent with Claimant's assertions of limitations. (Tr. 17-21).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

While the ALJ could have performed his function of linking the evidence and his findings of credibility with more clarity and detail, it is apparent that the ALJ considered Claimant's statements of limitation in light of the medical evidence to which he cited in the decision. This Court finds the linking of the evidence to his findings on credibility to be adequate.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision

by the District Court based on such findings.

DATED this 10th day of May, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE